UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:16-cr-00196 |
| | ) | CHIEF JUDGE CRENSHAW |
| MITCHELL HUNTER OAKES, | ) | |
| Defendant. | ) | |

## ORDER

The Government has objected to the testimony of certain defense witnesses. A hearing was held on August 24, 2018. As stated on the record and further set forth herein, the Court rules as follows.

In considering the parties' arguments concerning the admissibility of the proposed testimony, the Court has considered: (1) Defendant's Memorandum regarding minor testimony (Doc. No. 331); (2) the Government's Response to Court Order regarding minor testimony (Doc. No. 332); (3) the Government's Motion to Exclude Defense Witness Testimony Pursuant to Federal Rule of Evidence 608; (4) the Government's Motion for Hearing Regarding Defendant's Third-Party Perpetrator and Alibi Defense (Doc. No. 341); (5) Defendant's Reply to Government's Response Requesting the Exclusion of Steven Oakes' Testimony (Doc. No. 343); (6) the Government's Supplement to Motion for Hearing Regarding Defendant's Third-Party Perpetrator and Alibi Defense (Doc. No. 344); (7) Defendant's Response to Government's Motion to Exclude Defense Witness Testimony Pursuant to Federal Rule of Evidence 608 (Doc. No. 347); (8) Defendant's Response to the Government's Motion for Hearing Regarding Defendant's

1

Third-Party Perpetrator and Alibi Defense (Doc. No. 348); (9) the Government's Reply to Motion for Hearing Regarding Defendant's Third-Party Perpetrator and Alibi Defense (Doc. No. 350); and (10) Defendant's Sur-Reply to the Motion for Hearing Regarding Defendant's Third-Party Perpetrator and Alibi Defense (Doc. No. 351).

I. Legal Standards

As the Court has previously explained, subject to Rule 403, under Rule 401 "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." "The standard for relevancy is extremely liberal." United States v. Whittington, 455 F.3d 736, 738 (6th Cir. 2006) (citation omitted). "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." DXS, Inc. v. Siemens Med. Sys., Inc., 100 F.3d 462, 475 (6th Cir. 1996). In a criminal trial, "the accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged." Holmes v. South Carolina, 547 U.S. 319, 327 (2006). However, "[such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." Id. (quoting 40A Am. Jur. 2d Homicide § 286 (1999)).

Under Federal Rule of Evidence 608, "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been

attacked. . . . Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. "Such rules are designed to prevent distracting mini-trials on collateral matters." Boggs v. Collins, 226 F.3d 726, 744 (6th Cir. 2000) (affirming exclusion of certain additional testimony regarding prior false rape allegation where court had allowed wide latitude on cross-examination).

Hearsay is a statement that the declarant does not make while testifying at trial and a party offers it in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if "it is offered against an opposing party" and "was made by the party's coconspirator during and in furtherance of the conspiracy." Accordingly, to admit the statements of a co-conspirator in a criminal case under Rule 801(d)(2)(E), the Court must find that: (1) a conspiracy existed; (2) *a defendant* was a member of the conspiracy; and (3) the co-conspirator made the proffered statements in furtherance of the conspiracy. United States v. Warman, 578 F.3d 320, 337 (6th Cir. 2009) (emphasis added); United States v. Wilson, 168 F.3d 916, 920 (6th Cir. 1999). A defendant cannot introduce alleged co-conspirator's statements on his own behalf because the Government is not a "party" to the conspiracy. United States v. Mack, 159 F.3d 208, 215 (6th Cir. 1998); United States v. Miller, 48 F. App'x 933, 950 (6th Cir. 2002). Furthermore, a witness is not a "party" within the meaning of Rule 801(d)(2)(E). See Miller, 48 F. App'x at 950 (where co-defendant who pleaded guilty before trial was a witness, not a party, affirming district court's refusal to apply Rule 801(d)(2)(E) to witness's testimony) (citing Ratzlaf v. United States, 510 U.S. 135, 143 (1994)).

3

Another exception to the hearsay rule is a statement against interest. Fed. R. Evid. 804(b)(3). This is a statement that (1) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and (2) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability. Id. For a statement against interest, the declarant must be unavailable. Id.

Finally, under Federal Rule of Evidence 807, a hearsay statement may be admissible even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804 if:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

II. Discussion

1. **Margaret Bisutti**; **Tim Blaylock**; **Angie Labombard**; **Rich Moore**; and **Mitchell Horace Oakes**.

Aside from reserving standard objections during the presentation of evidence, the Government has represented that it does not object to these defense witnesses. (Doc. No. 344 at 1.)

2. **Steven Oakes**

The Government makes multiple objections to the testimony of the minor Steven Oakes,

including that (1) it would improperly introduce the subject of Ms. Oakes brandishing a weapon in anger the day she was abandoned by Defendant; (2) it would improperly offer an irrelevant opinion that Steven Oakes is not afraid of his father because Defendant has not been charged with any crimes against Steven Oakes; (3) it would offer improper character evidence; (4) it would be prejudicial and confusing; and (5) testimony that Steven Oakes once overheard Ms. Oakes say she was going to "set up" Defendant and that Steven Oakes previously told others he had heard this would be improper hearsay. Defendant has clarified in response that he wishes call Steven Oakes to testify about the following: (1) the anger and rage Ms. Oakes displayed upon learning Defendant had left their marriage; (2) Ms. Oakes' reputation for truthfulness; (3) Steven Oakes having overheard Ms. Oakes discussing "setting up" Defendant.

The Court finds that Steven Oakes has limited relevant testimony to offer.

First, Steven Oakes' proposed testimony regarding overhearing Ms. Oakes talking about "setting up" Defendant is clearly relevant to the defense theory of the case and "tend[s] to prove that another person may have committed the crime with which the defendant is charged." Holmes, 547 U.S. at 327. This line of questioning is neither speculative nor remote, and it rebuts the prior testimony of Ms. Oakes. However, this testimony is hearsay. The relevant question is whether it is being offered for the truth of the matter asserted or as evidence of Mrs. Oakes' motive or state of mind. The Court reserves ruling on this testimony pending a further live proffer before this witness testifies before the jury.

Second, the Court finds it appropriate for Steven Oakes to testify regarding witnessing Ms. Oakes' anger and rage, including her brandishing a firearm at Danny Rickman, on June 21, 2016. This testimony is relevant to the defense theory that Ms. Oakes was bent on revenge after

5

Defendant left her on June 21, 2016. While Ms. Oakes was not asked directly on cross-examination whether she brandished a weapon on June 21, 2016, she explained what she did that day and did not mention any such occurrence. This testimony is thus also acceptable as rebuttal. Finally, this testimony serves to provide corroboration for the testimony of Danny Rickman, discussed below.

Third, the Court will not allow Steven Oakes to testify about his relationship with his parents, or that Defendant has never threatened him, as there has been no question raised in this case regarding Defendant and Steven Oakes' relationship, and to raise questions about that relationship or the quality of Ms. Oakes' parenting might unnecessarily confuse the jury.

Finally, the Court finds that it is not appropriate for Steven Oakes to testify regarding his general opinion as to Ms. Oakes' truthfulness or about whether Defendant would or would not have committed the alleged crimes. First, it is the province of the jury to make those determinations. Second, based on representations to the Court, Steven Oakes has a very contentious relationship with Ms. Oakes for reasons not necessarily related to this case. His youthful opinions might be colored by that ongoing relationship and could easily be confusing, prejudicial, and misleading to the jury.

To the extent that Steven Oakes' testimony is allowed, the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509, provides that "a child is presumed to be competent." Id. § 3509(c)(2). In United States v. Bourne, No. 93-1869, 19 F.3d 19, 1994 WL 84742 at 1 (6th Cir. 1994) (table), the Court of Appeals for the Sixth Circuit noted that this provision lends itself to the interpretation that a child witness is presumed competent to testify in the absence of an express determination to the contrary, although the issue was not preserved and the panel did not rule on it.

In <u>United States v. Allen J.</u>, 127 F.3d 1292, 1295 (10th Cir. 1997), the court stated: "Upon enactment of § 3509, the rules changed. Now children are presumed competent and the party seeking to prevent a child from testifying has the burden of providing a compelling reason for questioning the child's competence." Similarly, the Seventh Circuit has concluded that § 3509(c)(2) means that "[c]hildren are presumed to be competent to testify." <u>United States v. Snyder</u>, 189 F.3d 640, 645 (7th Cir. 1999). The Government has not raised any challenges to Steven Oakes' competency and, therefore, the Court will presume him to be a competent witness under this precedent unless it becomes apparent that he cannot appreciate the nature of the proceedings.

The Court has been advised that his guardian *ad litem*, Susan Arnold, will be present in the courtroom. She may raise any objections directly with the Court. Ms. Oakes will not be present in the courtroom. Furthermore, the parties shall ensure that Ms. Oakes and Steven Oakes do not have any encounters outside the courtroom prior to Steven Oakes' testimony. Ms. Arnold shall advise the Court if any violation of this Order occurs. Defense counsel shall provide Ms. Arnold with a copy of this Order. The parties are further advised that the Court intends to utilize the Sixth Circuit Pattern Jury Instruction concerning age of witnesses. <u>See</u> Pattern Crim. Jury Instr. 6th Cir. 7.10 (2017 ed.).

    3.    **<u>Danny Rickman</u>**

The Government objects to the proposed testimony of Danny Rickman that (1) sometime prior to September 10, 2016, Ms. Oakes was at 76 Oakes Lane by herself and entered the home without any supervision, and (2) on June 21, 2016, Ms. Oakes pulled a gun on him when she was looking for Defendant in anger. The Government argues this testimony is not probative, but is

confusing, and prejudicial. The Court does not agree. First, Rickman allegedly witnessing Ms. Oakes at 76 Oakes Lane alone is clearly relevant to the defense theory of the case and "tend[s] to prove that another person may have committed the crime with which the defendant is charged." Holmes, 547 U.S. at 327. This line of questioning is neither speculative nor remote, and it rebuts the prior testimony of Ms. Oakes. However, the Court finds that this testimony is only relevant if the incident occurred between June 21, 2016 and September 10, 2016 – i.e., the period during which Ms. Oakes was estranged from Defendant and she would have been unauthorized to be at 76 Oakes Lane. Second, testimony that Ms. Oakes brandished a weapon when she was searching for Defendant in anger is relevant to the defense theory that Ms. Oakes was bent on revenge after Defendant left her on June 21, 2016. Furthermore, while Ms. Oakes was not asked directly on cross-examination whether she brandished a weapon on June 21, 2016, she explained what she did that day and did not mention any such occurrence. This testimony is thus also acceptable as rebuttal. Testimony as to the gun incident should not venture into any related legal proceedings. The Court finds that this evidence is neither unfairly prejudicial nor overly confusing.

    4.    **Steve Perry**

The Government objects to the proposed testimony of Steve Perry, Ms. Oakes' father, related to (1) Ms. Oakes' alleged false allegations of sexual abuse of Steven Oakes, and (2) DNA testing concerning Steven Oakes. As to the allegations of sexual abuse of Steven Oakes, Defense counsel has already been allowed to generally elicit from Ms. Oakes on cross-examination that she brought a false charge against her father. The Court finds that such examination was sufficient and that to revisit that subject would stray into irrelevant, prejudicial and confusing matters, and will avoid a "mini-trial" pursuant to the spirit of Federal Rule of Evidence 608. Such testimony is

therefore precluded. As to testimony regarding DNA testing, Steve Perry may testify as to any DNA testing that he was personally involved in (including the reasons for such testing and the results thereof). This testimony is relevant to the defense theory of the case that Ms. Oakes lured Defendant into marriage as part of a campaign for his money and is not unfairly prejudicial to the Government. However, while Steven Perry may testify as to his personal knowledge of any allegations of DNA testing by Ms. Oakes, he may not testify as to unsupported opinions about that alleged testing, as this would be speculation (and could involve hearsay).

5.  **Floyd Stanley, Sybil Stanley, George Hodge, Russell Summers, Stanley Matthews**

Defendant proposes to call these witnesses to testify that they overheard Mike Nichols talking about a plot with Ms. Oakes to pick up a bomb from George Anderson, Sr. (or, in the case of George Hodge, that Floyd Stanley told him he heard this). The Government objects on the ground that the testimony is too speculative and that it is hearsay. As to the first argument, the Government contends that the testimony is too "remote" and "barely casts suspicion on" Ms. Oakes. This argument cannot credibly be maintained. This is obviously "legal evidence tending to prove that another person may have committed the crime with which the defendant is charged" that "tend[s] to prove or disprove a material fact in issue at the defendant's trial." Holmes, 547 U.S. at 327.

Defendant has a more serious problem though – the testimony of these witnesses is hearsay (or, in the case of George Hodge, double hearsay). Each of these witnesses's testimony would be based on no independent knowledge other than what Mike Nichols was overheard to say. Defendant first contends that this testimony should be admissible as "not hearsay" under the

9

exception in Federal Rule of Evidence 801(d)(2)(E). But this Rule only provides that a statement is not hearsay if "it is offered against an opposing party" and "was made by the party's coconspirator during and in furtherance of the conspiracy." Defendant argues that Ms. Oakes and other men were in the "conspiracy" that triggers this Rule. But Defendant misunderstands the Rule. Ms. Oakes, as a witness (as opposed to a Defendant), is not a "party" within the meaning of Rule 801(d)(2)(E). See Miller, 48 F. App'x at 950. And even if she was, Defendant could not utilize the Rule against the Government because the Government is not a "party" to the conspiracy. United States v. Mack, 159 F.3d 208, 215 (6th Cir. 1998); Miller, 48 F. App'x at 950.

Defendant next argues that this testimony should be admissible under the exception for a statement against interest in Federal Rule of Evidence 804(b)(3). However, this exception is only available if the declarant is unavailable. Defendant represents that Mike Nichols, the declarant in this circumstance, has been subpoenaed and, at this time, is scheduled to be a witness at trial. Thus, Nichols is "available" and this exception does not apply. Were Nichols to become unavailable, however, Defendant may raise the application of this exception again with the Court.

Finally, Defendant asks the Court to apply the residual exception to the hearsay rule found in Federal Rule of Evidence 807. However, evidence is to be admitted under the residual exception only under "exceptional circumstances." United States v. W.B., 452 F.3d 1002, 1004-05 (8th Cir. 2006); Pozen, Inc. v. Par Pharm., Inc., 696 F.3d 1151, 1162 n.6 (Fed. Cir. 2012) (same). This is not an exceptional case; it involves allegations that Defendant committed a crime and a claim by Defendant that someone else is responsible. But more importantly, the third element of Rule 807 requires that the evidence be more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts. Here, that is not the case.

Defendant has available to him the direct testimony of both Mike Nichols and George Anderson, Sr. Their testimony is more probative as to whether Ms. Oakes is framing Defendant than what Nichols may have been overheard to say. Accordingly, these witnesses' hearsay evidence is excluded.

The Court also notes that Defendant proposes to call Russell Summers, Ms. Oakes' ex-husband, to testify to (1) a life insurance policy Ms. Oakes took out on him while they were married, and (2) that Ms. Oakes stole from him during their marriage. The Court does not find this testimony probative of any of the issues in this case. It has already been established through the examination and cross-examination of Ms. Oakes that she has been married multiple times and has contentious personal relationships. However, the intimate disputes of a prior marriage do not tend to prove or disprove Defendant's guilt, nor do they offer any real support for Defendant's theory of the case. Rather, it is cumulative and would be distracting to the jury. This evidence is therefore also excluded.

6. **<u>George Anderson, Sr.</u>**

Defendant's objection to the testimony of George Anderson, Sr., the individual from whom Mike Nichols allegedly stated in front of multiple people he was going to pick up a bomb, appears to be limited to speculative nature/remoteness, as this testimony does not implicate hearsay concerns. As discussed above, this testimony is relevant to the defense theory of the case and not too remote. The Court will permit Mr. Anderson to testify and he may be directly examined as to whether he supplied a bomb to Mike Nichols and/or Ms. Oakes.[1]

---

1 The Court has expressed Fifth Amendment concerns related to George Anderson's testimony. Should any such testimony appear self-incriminating, the Court will advise the witness of his rights outside of the presence of the jury. Defense counsel shall also advise the Court if it expects

7. **Kyle Scott**

Defendant represents that Kyle Scott may be called to testify that Ms. Oakes sent an email in June 2018 impersonating Defendant and asking a question about the legal settlement to which Defendant already knew the answers. Although not precisely clear, it appears the Government also objects to this testimony on relevance and remoteness grounds. The Court finds that this testimony is relevant and probative of issues in this case. At a minimum, this testimony is relevant (1) to whether Ms. Oakes was trying to exact revenge on Defendant, (2) to whether Ms. Oakes had access to personal information of Defendant, including, perhaps, contact information that was the subject of other witness's testimony at trial, and (3) as rebuttal to Ms. Oakes' own testimony regarding her specific actions impersonating or nor impersonating Defendant. This witness will be allowed to testify.

8. **Bryan Self**

Defendant represents that Bryan Self may be called to testify that Ms. Oakes told him she bought Defendant's trailer in Georgia. The Court has previously overruled the Government's objections to testimony regarding the sale of the trailer, having determined that it is relevant to the defense theory that, during the time surrounding the bombing incident, Ms. Oakes began selling Defendant's possessions whether she had the right to do so or not. Bryan Self's testimony would directly rebut Ms. Oakes' testimony about what she said and did regarding the trailer. This witness will be allowed to testify.

9. **Mike Nichols**

It does not appear to the Court that Defendant intends to call Mike Nichols, but should that

---

any self-incriminating testimony.

be the case, his testimony would be relevant to the defense theory of the case. He may be directly examined as to whether he conspired with Ms. Oakes and/or picked up a bomb from George Anderson.

In conclusion, the pending Motions (Docket Nos. 333, 341) are **GRANTED IN PART AND DENIED IN PART** as summarized above.

By **August 27, 2018, at 9:00 p.m.**, the parties shall:

A. File briefs regarding the proposed testimony of Jason Rogers and Howard Upchurch. Among other things, the Court is concerned about (1) the extent to which Mr. Rogers will specifically testify about alleged efforts to steal Defendant's belongings rather than generally testify about Ms. Oakes' character and his affair with her, and (2) the potential impact of the Government's desire to cross-examine Mr. Upchurch with details of Defendant's prior convictions, which have been carefully kept from the jury by means of stipulation.

B. Meet and confer and file a joint statement regarding the (1) aiding and abetting jury instruction and (2) the alibi jury instruction. The parties shall specifically address the apparent tension between the former's implication that Defendant need not have been present at the scene and the latter's apparent requirement that if the Defendant was not present he cannot be found guilty.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE